UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TOMMIE SLACK,

     Plaintiff,

 v.

MICHAEL WOODBURY, et al.,

     Defendant.

CASE NO. C19-159-RSM-BAT

**REPORT AND RECOMMENDATION**

In this civil rights action brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc–1(a), plaintiff Tommie Slack, proceeding pro se and *informa pauperis*, names as defendants Michael Woodbury, Namon Merritt, Jr., Eliud Rodriguez, Michael Browning, Cesar Garcia, David Knutzen, Michael Preizz, and James Mattman, all employees of King County at the time of the events giving rise to Mr. Slack's claims.[1] Mr. Slack alleges that defendants violated his rights under 42 U.S.C. § 2000cc–1(a) (the Religious Land Use and Institutionalized Persons Act (RLUIPA)) and Article I, section 11, of the Washington State Constitution, by exposing him to pork or pork products, as a Muslim, while he was working as an inmate trustee in the kitchen at the King County Regional Justice Center (RJC). Dkt. 2, at 4-29. He further alleges defendant

---

[1] In Mr. Slack's complaint, defendant Rodriguez is initially identified as "Elliot", defendant Browning is identified as "Michael", defendant Garcia is identified as "Cesar", defendant Mattman is identified as "James", and defendant Preizz is identified as "Michael." Dkt. 2, at 5. However, based on Mr. Slack's complaints, defendants identified the full proper names of the defendants listed as provided above. Dkt. 7.

REPORT AND RECOMMENDATION - 1

Browning "used a non-violent situation" about an alleged threat Mr. Slack made against another inmate to infract him and that defendant Merritt, as supervisor, upheld the infraction. *Id.*, at 25-27. He alleges he lost his custody status and his job as an inmate trustee over "an alleged threat that never happened" and appears to allege that this was in retaliation for his complaints and grievances related to his exposure to pork in the RJC kitchen. *Id.* Mr. Slack's claims are brought against all defendants in their individual capacities. Dkt. 2, at 8-10, Dkt. 47, at 23.

As relief Mr. Slack seeks: a "declaratory judgment" stating that defendants' actions violated his rights under RLUIPA and the Washington State Constitution; an injunction ordering RJC "and their agents" to stop storing, preparing, and cooking pork, pork products, or pork bi-products in the jail; an injunction ordering food services manager (non-defendant) "Mrs. Hendershot" to provide Mr. Slack the food budget record; punitive damages in the amount of $1,000.00 against defendant Preizz, $2,500.00 against each of defendants Woodbury, Merritt, and Rodriguez, and $5,000.00 each against defendants Mattman, Browning, and Garcia. Dkt. 2, at 27-28. Defendants move for summary judgment. Dkt. 38. The Court recommends that the defendants' motion for summary judgment be GRANTED.

## BACKGROUND

Mr. Slack was booked into the King County Correctional Facility ("KCCF") on February 27, 2018, and remained through July 24, 2018. Dkt. 41, (Decl.of Andrea Williams) at ¶12. He was housed at the King County Regional Justice Center ("RJC"). *Id.* At the time of his initial booking in February of 2018, Mr. Slack's classification status was medium security. *Id.*, at ¶13 He was given an override and changed to minimum security status on March 1, 2018. *Id.* All inmate workers at the KCCF are required to have minimum security status to work as a trustee. Dkt. 39, (Decl. of T. Shane Harrison) at ¶ 4 and Ex. B, (Defendants' Request for Admission) at 3. Mr. Slack began working as an inmate worker in the RJC kitchen on March 6, 2018. Dkt. 40, (Decl. of Sandra Courtway) at ¶7. He

REPORT AND RECOMMENDATION - 2

worked catching trays, scooping rice, and putting sporks on trays until he was moved to pots and pans on March 15, 2018. *Id.*

During the time he was assigned to wash pots and pans, Mr. Slack alleges he was exposed to pork or pork products. Specifically, he states in April 2018, he discovered defendants Mattman, Browning, Rodriguez, and Preizz were cooking Campbell split pea soup, pork and bean soup, and pork meat, along with preparing meals for the jail population. Dkt. 2, at 11-16. The General Policy Manual for the King County Department of Adult and Juvenile Detention (which operates King County Correctional Facility and King County Regional Justice Center) provides that "[n]o foods containing pork, pork products, or pork by-products are served to inmates." Dkt. 41, at Exh. B (King County Department of Adult and Juvenile Detention Adult Divisions General Policy Manual, Policy 7.04.006 "Special Diets").

Mr. Slack states he asked these defendants if they were cooking real pork and when this was confirmed asked if cooking these products was allowed. Dkt. 2, at 11-16. Mr. Slack indicates he voiced his concerns to the defendants about being in contact with pork which is prohibited as a Muslim. *Id.* Mr. Slack alleges these defendants told him they had been cooking pork before he arrived at RJC and if he had a problem with it he could quit. *Id.* Mr. Slack states he asked to see a rule or policy allowing cooking of pork or pork products in the RJC kitchen. *Id.* He alleges one of the kitchen staff called defendant Meritt and complained. *Id.* Mr. Slack states defendant Meritt told him that the kitchen staff had called him and that they liked him and did not want to fire him for inciting or trying to convert other inmates to Islam. *Id.* Mr. Slack contends defendant Meritt also told him that if he was fired he would lose his custody override and be demoted to closed custody. *Id.* Mr. Slack states he wrote an inmate classification kite explaining he is a Muslim and that pork and pork products were being cooked in the RJC kitchen along with inmate food. *Id.* Mr. Slack indicates that classification told him he was following the correct procedure but that if he was fired he would lose his override. *Id.*

REPORT AND RECOMMENDATION - 3

Mr. Slack states that on June 6, 2018, defendant Mattman was cooking and separating a "very large brisket of pork" and was using the same pots and pans as were used for inmate meals. *Id.* Mr. Slack states he confirmed with defendant Mattman that the meat was pork. *Id.* Mr. Slack indicates he was assigned to wash pots and pans, as well as dishes from the "blue room" used by correctional staff and other employees working at the jail. *Id.* Mr. Slack indicates due to his Muslim beliefs he decided not to wash pots and pans or dishes from the blue room that were contaminated with pork. *Id.*

Mr. Slack filed a grievance indicating that he had observed pork meat being cooked in the RJC main kitchen and had voiced his concerns about being Muslim. Dkt. 40, at 5-6. The grievance indicates that his "concerns over this has me feeling threatened to lose my job and classification …I'm not trying to convert other inmates to become muslims, nor incite them against staff over my ambivalence being forced to smell pork, wash pots or pans or staff dishes that once contained pork or the stress of losing my job and classification over pork being cooked along with inmate meals." *Id.* The grievance goes on to state that he wants to remain a P.M. kitchen worker and wants to understand if there is a concession in the rules allowing staff to cook pork in the main kitchen at RJC. *Id.* The initial response to the grievance, which appears to be issued by defendant Knutzen, states "we do cook pork in the RJC kitchen from time to time, however we do not service pork to inmates. As far as washing pots and pan or dishes that may have contained pork, you will no longer be assigned to the dish washing area." *Id.* Mr. Slack appealed the grievance stating that "pork steam like second hand smoke settles on inmates food, clothes, hair and skin … [and] Islamic inmates are unaware they are eating pork off contaminated trays of food." *Id.* The final response to Mr. Slack's grievance states "no pork is served to population therefore not on trays." *Id.*

Mr. Slack also alleges, on June 7, 2018, while working in the RJC kitchen, he was given pork and beans on his tray. Dkt. 2, at 15-17. Mr. Slack indicates he showed defendant Merritt the pork and beans on his tray and defendant Merritt told him the pork and beans were not real. *Id.* Mr. Slack indicates he asked officer Perkin to "google Cambel" and see if they made imitation pork and bean

REPORT AND RECOMMENDATION - 4

soup and learned it is made with real pork fat. *Id.* Mr. Slack filed a grievance with respect to this incident requesting to see a rule or regulation "that moots 42 U.S.C.A. 200-1" and stating that staff were aware he was a Muslim. *Id*; Dkt. 40, at 9-10 (Grievance Report Marked "Received" June 15, 2018). The initial response to Mr. Slack's grievance states that "as per kitchen staff – inmates do not get Cambells brand. Inmates get the "pork + beans" that is made with non-pork meat. If you received the Cambells brand then you should have not taken it. That brand is only reserved for the officers." *Id.* Mr. Slack appealed the decision asking again for a rule or regulation "that moots 42 U.S.C.A. 200-1" and that there is "no such meal made as fake pork and beans, please provide the name of the product." *Id.* The final response to Mr. Slack's grievance, dated June 19, 2018, from defendant Woodbury states "pork and beans are not served in this facility. If you were given soup with beans it would be beans and bacon. If you were given this soup you were told it contains pork products. If you ate this soup you did so with full knowledge of its contents." *Id.*

Mr. Slack alleges on June 8, 2018, he was taking the label off a large can of Campbel pork and bean soup when defendant Garcia the baker alleged Mr. Slack was stealing his property. Dkt. 2, at 17-18. Mr. Slack alleges defendant Garcia was attempting to achieve an aggressive response from him to use as grounds to terminate him and that he fabricated the soup being his property. *Id.* Mr. Slack alleges that May 22, 2018, was the start of Ramadan and that "humidity from cooking pork settled on the muslim community's Ramadan food, sacks that [were] being prepared less than 10 feet away." Dkt. 2, at 17-20. Mr. Slack alleges defendant Rodriguez attempted to get the inmate kitchen workers to convince him to stop complaining by informing them that due to Mr. Slack's complaints they would no longer be able to get leftover food from what the jail employees brought in addition to their regular inmate food. *Id.*

Mr. Slack alleges defendant Browning was aware of his complaints and would follow him around the kitchen pretending not to listen to his conversations while defendants Mattman or Rodriguez would prepare pork food behind Mr. Slack's back. *Id.*, at 20. Mr. Slack alleges defendant

REPORT AND RECOMMENDATION - 5

Knutzen "reprimanded" him for filing grievances stating that since he was Muslim and concerned about pork contaminating everything he would have to remove him from washing pots and pans. *Id.*, at 21. Mr. Slack indicates he inquired of defendant Woodbury personally if pork was allowed to be cooked in the RJC kitchen and defendant Woodbury responded that it was not. *Id.*, at 22.

Mr. Slack indicates that on June 11, 2018, another inmate named "Fahey", was upset over Mr. Slack pressing the pork issue and when Mr. Slack approached screamed for at him to "get away." *Id.*, at 24-26. Mr. Slack claims he walked away without responding. *Id.* Mr. Slack contends defendant Browning asked Fahey what had happened and then reported that Fahey had told him Mr. Slack had threatened him. *Id.* Mr. Slack denied threatening Fahey. *Id.* Mr. Slack states he called the kitchen staff cowards for their mistreatment of Muslim observance of Ramadan. *Id.* Mr. Slack indicates that defendant Browning infracted him for this and defendant Merritt approved the infraction. *Id.* Mr. Slack states defendant Browning told him to sit and eat but that Officer Keller was telling him "let's go" and that Browning then added a "refusing a direct order" to the alleged threat infraction. *Id.*, at 24-26.

The infraction report contains a description of the incident by defendant Browning which states:

> I C/B/ Browning on 6/11/18 on or around 1700 hrs heard inmate Fahey say 'get away from me'. I went up to inmate Fahey and asked him what was going on, he told me that 'inmate slack threatened him and they were arguing M-207, Inmate Slack was still in the area. I asked inmate Slack if he threatened inmate Fahey and he said 'no I did not'. I saw officer Keller walking bye and asked her to remove Slack and Fehey. She entered the kitchen asked the inmates to 'hurry up and eat your food.' As me and officer Keller were standing there inmate Slack called me a "coward" G-301, officer Keller instructed him to be quiet and inmate Slack responded "I don't have to be quiet" G-301, G-302. I request that inmates Slack and Fahey don't come back to AM or PM crews in RJC or KCFF.

Dkt. 40, at Exh. B (Inmate Infraction Report).

REPORT AND RECOMMENDATION - 6

Mr. Slack denies threatening inmate Fahey but does not deny calling defendant Browning a coward or refusing to comply with Officer Keller's order to be quiet.

Classification held a disciplinary hearing on June 13, 2018, related to the infraction before Hearing Officer Tomasini (who is not named as a defendant). Dkt. 40, at Exh. B (Inmate Infraction Report). Classification sanctioned Mr. Slack to removal from inmate worker status based on a guilty finding for Nuisance Activity (G309), related to calling defendant Browning a coward, and Refusing Orders (G302), for refusing to obey Officer Keller's order that he be quiet in a timely manner. *Id.* The decision of the disciplinary hearing officer indicates Mr. Slack was found not guilty of M-207, as this violation does not exist, and that the report narrative did not provide enough information to support a guilty finding for S-209/threats. *Id.* Mr. Slack did not appeal his loss of status following the disciplinary hearing. *Id.*; Dkt. 39, Ex. B (Defendants' Requests for Admission) at 3.

Mr. Slack subsequently filed a grievance, stamped received on June 13, 2018, stating:

> I have been fired from the inmate kitchen for a incident report I'm not guilty of in which I believe it is in retaliatory for Slack grieving pork being cooked along with inmate food. At first kitchen staff contacted Sgt Merritt alleging I was tempting to incite other inmates working in the kitchen to trying to convert inmates to Islam … When Slack tried to take a Camble [sic] Soup label off a can of pork and bean the Baker Cesar alleged the pork soup was his personal belonging which is not the truth yet a attempt to find grouns [sic] to terminate me. I spoke with Sgt. Merritt being warned then filed the grievance anyway knowing they was looking for cause to terminate me. I have a unrequested written statement from IM Fahey verifying he was not threaten by Slack.

Dkt. 40, at Exh. A (Grievance Report Marked Received June 13, 2018). The initial response to the grievance from defendant Knutzen states "you were remove from the kitchen for threatening inmate fahey[.]" *Id.* Mr. Slack appealed the denial of the grievance stating he "was found not guilty for threatening." *Id.* The final response to the grievance states "see Classifications pertaining to housing issues." *Id.*

Mr. Slack was moved from KCCF to a state facility on July 24, 2018, to serve his sentence. Dkt. 41, at ¶12; Dkt. 40, at ¶6.

REPORT AND RECOMMENDATION - 7

# LEGAL STANDARDS

### A. Summary Judgment

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000). A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson*, 477 U.S. at 248. In other

words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1121 (9th Cir. 1995).

**B.    42 U.S.C. § 1983**

To be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show: (i) the conduct complained of was committed by a person acting under color of state law; and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986).  Section 1983 is not merely a "font of tort law." *Parratt*, 451 U.S. at 532.  That plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections.  *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of.  *Id.* (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

**DISCUSSION**

**A.    RLUIPA**

Mr. Slack alleges defendants' actions in exposing him to pork and pork products in the RJC kitchen by cooking meet for their own meals, and in serving him pork and beans when he was working in the kitchen on one occasion, violated his rights under RLUIPA. Mr. Slack sues defendants in their individual capacities only. Dkt. 47, at 23.

In 2000, Congress passed the Religious Land Use and Institutionalized Persons Act (RLUIPA), which provided heightened protection of religious beliefs to prevent undue barriers to religious observances by persons institutionalized in state or federal institutions. Under RLUIPA, no government "shall impose a substantial burden on the religious exercise of a person residing or confined to [a jail, prison or other correctional facility] ... even if the burden results from a rule of general applicability," unless the burden furthers a "compelling governmental interest" and is the "least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a).

RLUIPA does not allow claims against prison officials sued in their individual capacities. *See Wood v. Yordy*, 753 F.3d 899, 901 (9th Cir. 2014) (RLUIPA does not contemplate liability of government employees in individual capacity). A suit against a defendant in his individual capacity "seek[s] to impose *personal* liability upon a government official for actions he takes under color of state law.... Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (internal quotation marks omitted; emphasis added); *see also Community House, Inc. v. City of Boise, Idaho,* 623 F.3d 945, 966–67 (9th Cir. 2010) (an official capacity suit is treated as a suit against the entity). RLUIPA was "enacted pursuant to Congress's spending and commerce powers," *Wood,* 753 F.3d at 902, and applies in relevant part to any "program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc1(b)(1). The Ninth Circuit has explained that because individual employees are not the governmental "recipients" of federal funds, they are not liable in their individual capacities under RLUIPA. *See Wood,* 753 F.3d at 904 ("[T]here is nothing in the language or structure of RLUIPA to suggest that Congress contemplated liability of government employees

REPORT AND RECOMMENDATION - 10

in an individual capacity..... The statute does not authorize suits against a person in anything other than an official or governmental capacity, for it is only in that capacity that the funds are received."). Here, Mr. Slack has explicitly sued the defendants in their individual capacities only and his claims under RLUIPA may not be maintained. [2]

Even if the Court were to ignore the fact that Mr. Slack's pleadings specifically allege claims against defendants in their individual capacities only and were to construe the substance of his claims against the defendants in their official capacities, the complaint contains insufficient facts to support an official capacity claim. An official capacity claim must be treated as a claim against the municipality. A municipality, however, can be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell,* 436 U.S. at 693; *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quotation marks and citation omitted) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's 'policy or custom' must have played a part in the violation of federal law." (some quotation marks omitted)).

Mr. Slack's complaint lacks sufficient factual content to give rise to a plausible *Monell* claim. *See, e.g., Rodriguez v. City of Modesto,* 535 Fed. App'x 643, 646 (9th Cir. 2013) (affirming the district court's dismissal of *Monell* claim based only on conclusory allegations and lacking factual allegations). Mr. Slack fails to allege that any jail "policy or custom", rather than the alleged individual actions of several of the defendants in cooking pork for their own consumption in the inmate kitchen, caused the alleged constitutional violation. Accordingly, even construing plaintiff's complaint as against the defendants in their official capacities, it fails

---

[2] The Court notes that Mr. Slack did attempt to amend his complaint but his motions were denied due to the fragmented and contradictory nature of his proposed amended complaints.

REPORT AND RECOMMENDATION - 11

to adequately allege a cognizable theory of *Monell* liability. This is not to say that Mr. Slack could not necessarily state an official capacity claim, but only that his current complaint, both in form and substance, is brought against defendants in their individual capacities only.[3]

Although it need not necessarily reach the issue, the Court also notes that Mr. Slack's requests for injunctive relief under RLUIPA should also be dismissed as moot because he is no longer incarcerated at KCCF/RJC. A case is moot "when it has 'lost its character as a present, live controversy of the kind that must exist if [the court is] to avoid advisory opinions on abstract propositions of law.'" *Oregon v. FERC,* 636 F.3d 1203, 1206 (9th Cir. 2011) (per curiam) (quoting *Hall v. Beals,* 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969) (per curiam)). Because "[t]he jurisdiction of federal courts depends on the existence of a 'case or controversy' under Article III of the Constitution," we must dismiss a case that has become moot. *Pub. Util. Comm'n of Cal. v. FERC,* 100 F.3d 1451, 1458 (9th Cir. 1996) (quoting *GTE Cal., Inc. v. FCC,* 39 F.3d 940, 945 (9th Cir. 1994)).

"[W]hen a prisoner is moved from a prison, his action will usually become moot as to conditions at that particular facility." *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001); *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) ("An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action."). An exception to the mootness doctrine

---

[3] The Court notes that the statute of limitations for bringing a claim under RLUIPA is four years from the date of accrual of the claim while the statute of limitations for bringing a claim under 42 U.S.C. § 1983 is three years from the date of accrual. *See Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012) (noting that the parties agreed "RLUIPA does not contain its own statute of limitations period, but that civil claims, such as RLUIPA claims, arising under an Act of Congress enacted after [December 1, 1990], have a four-year period of limitations.") (internal citation and quotation marks omitted)). Federal courts apply the forum state's personal injury statute of limitations to § 1983 claims and a three year statute of limitations applies in Washington State. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985) *superceded by statute on other grounds,* Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5114, *as recognized in Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 377–80, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004); RCW § 4.16.080; *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002).

REPORT AND RECOMMENDATION - 12

exists if a plaintiff shows there is a "reasonable expectation" or "demonstrated probability" he will return to the prison from which he was transferred. *See Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986).

Here, Mr. Slack's complaint alleges defendants' actions in cooking and preparing pork and pork products in the inmate kitchen, and in allegedly serving him pork and beans on one occasion while he was working in the inmate kitchen, violated his rights under RLUIPA. However, Mr. Slack no longer has standing to request prospective injunctive relief at KCCF/RJC -- he has been transferred to MCC. Thus, Mr. Slack's RLUIPA claim for injunctive relief is moot because he is no longer incarcerated at SCC. *See Barendt v. Gibbons*, 671 Fed.Appx. 515 (9th Cir. 2016) (mem) (finding plaintiff's RLUIPA claim moot where plaintiff no longer incarcerated at the facility). Moreover, Mr. Slack fails to show there is a "reasonable expectation" or "demonstrated probability" he will return to KCCF/RJC such that an exception to the mootness doctrine applies.

Accordingly, the Court recommends that defendants' motion for summary judgment (Dkt. 38) be granted and Mr. Slack's RLUIPA claims against defendants in their individual capacities be dismissed with prejudice.

**B.      Retaliation**

Mr. Slack also appears to allege he was fired from his job in the RJC kitchen based on an alleged threat that did not happen and he was fired in retaliation for his complaints about pork being cooked in the RJC kitchen.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  *Watson v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation omitted); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).  To

REPORT AND RECOMMENDATION - 13

state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). A plaintiff suing for retaliation under § 1983 must allege that "he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). The plaintiff does not need to show actual inhibited or suppressed speech, but that there was a chilling effect upon his speech. *Rhodes*, 408 F.3d at 569.

The Ninth Circuit has found that preserving institutional order, discipline and security are legitimate penological goals which, if they provide the motivation for an official act taken, will defeat a claim of retaliation. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners."). The burden is on the plaintiff to allege and demonstrate that legitimate correctional purposes did not motivate the actions by prison officials about which he complains. *See Pratt*, 65 F.3d 802, 808 (9th Cir. 1995). District courts must "afford appropriate deference and flexibility" to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt*, 65 F.3d at 807 (citing *Sandin v. Conner*, 515 U.S. 472 (1995)).

Reading Mr. Slack's complaint liberally, he appears to argue he was fired from his job in the RJC kitchen in retaliation for complaining and filing grievances related to the cooking of pork and pork products in the RJC kitchen. However, the undisputed record shows that Mr. Slack was removed from inmate worker status after being found guilty at a disciplinary hearing of nuisance activity and refusing to obey a direct staff order in a timely manner. The record shows the charges for which Mr. Slack was found guilty were based on Mr. Slack calling defendant Browning a "coward" and his refusal to comply with officer Keller's order that he be quiet and instead responding that "I don't have to be quiet."[4] Mr. Slack does not dispute the factual basis of these charges nor did he appeal the disciplinary decision.

Mr. Slack claims he was fired based on an alleged threat that did not occur and that this was in retaliation for his complaints and grievances. However, the record shows Mr. Slack was not found guilty of "S-209/threats" related to the allegation that he threatened inmate Fahey, because the report narrative did not provide enough information to support a guilty finding on such a charge. Furthermore, Mr. Slack does not dispute the factual basis for the charges for which he was found guilty and received the disciplinary sanction of removal from inmate worker status. Thus, the undisputed record reflects a legitimate penological reason for Mr. Slack's removal from inmate worker status. Accordingly, the Court recommends defendants' motion for

---

[4] The Court notes that generally an inmate's verbal challenges or rantings to correctional staff are not within the ambit of First Amendment protection. *See e.g. Loftis v. Montes*, 2019 WL 3806388 (C.D. Cal., June 25, 2019) (prisoner's challenge to officer's attitude and tone and ; *Johnson v. Carroll*, No. 2:08-cv-01494 KJN P, 2012 U.S. Dist. LEXIS 79380, 2012 WL 2069561, at *34 (E.D. Cal. June 7, 2012) (collecting cases); *Young v. Moreno*, 2012 U.S. Dist. LEXIS 70572, 2012 WL 1836088, *4 (C.D. Cal., May 08, 2012) (prisoner's verbal confrontation with correctional officer, which included plaintiff's statement that the officer was "stupid to write such bullshit RVR's," not protected speech); *Nunez v. Ramirez*, 2009 U.S. Dist. LEXIS 126235, 2009 WL 6305676, at *5 (S.D. Cal. Nov. 12, 2009) (finding plaintiff's speech not protected where he verbally challenged correctional officer), *report and recommendation adopted*, 2010 U.S. Dist. LEXIS 28689, 2010 WL 1222058 (S.D. Cal. Mar. 24, 2010).

REPORT AND RECOMMENDATION - 15

summary judgment be granted with respect to Mr. Slack's claim that he was fired in retaliation for complaining and filing grievances related to the pork issue.[5]

**C.     Washington State Constitution**

Mr. Slack also alleges defendants' actions in cooking and exposing him to pork in the RJC kitchen violated Article I, section 11 of the Washington State Constitution. Dkt. 2, at 28.

A district court has discretion over whether to exercise supplemental jurisdiction over state law claims arising from the same set of operative facts that supports a federal claim. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009) (citing 28 U.S.C. §§ 1367(a), (c)). Ordinarily, when a district court dismisses "all claims independently qualifying for the exercise of federal jurisdiction," it will dismiss all related state claims, as well. *Artis v. District of Columbia*, 138 S.Ct. 594 (2018) (citing 28 U.S.C. § 1367(c)) (2018); *see also Carlsbad Tech.*, 556 U.S. at 639-40; *see Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 1001 n. 3 (9th Cir.1997) (suggesting that a district court may, but need not, decide sua sponte whether to continue exercising supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) once all federal law claims have been dismissed).

Although the court is not required to dismiss the supplemental state law claims, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, fairness, convenience,

---

[5] Defendants note that Mr. Slack does not dispute that he was removed as a trustee following an infraction without filing an appeal and seek dismissal of Mr. Slack's retaliation claim for failure to exhaust administrative remedies at KCCF/RJC. Dkt. 38, at 5, n. 4. However, based on the undisputed record before the Court, there was a legitimate penological reason for Mr. Slack's loss of inmate worker status based on his guilty finding at the disciplinary hearing on charges of (1) "nuisance activity", for calling defendant Browning a "coward" (which he acknowledges in his complaint) and (2) "refusing to obey a direct staff order in a timely manner" for refusing to comply with officer Keller's order that he be quiet, and instead responding that he did not have to be quiet (which he does not dispute). Accordingly, the Court recommends that summary judgment be granted for defendants on this claim.

REPORT AND RECOMMENDATION - 16

and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Because the Court is recommending dismissal of all of Mr. Slack's federal claims the Court also recommends declining supplemental jurisdiction over Mr. Slack's state law claims. Accordingly, the Court recommends Mr. Slack's supplemental state law claim based on the Washington State Constitution be dismissed without prejudice upon dismissal of his RLUIPA claim on the same facts. *See Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989).

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **October 1, 2019.** The Clerk should note the matter for **October 4, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed **10 pages.** The failure to timely object may affect the right to appeal.

DATED this 17th day of September, 2019.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17